**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

*Jason S. Gould*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*
*Direct Dial: (973) 645-2776*

**Submitted *Ex Parte***

**To Be Filed Under Seal**

September 29, 2022

**By Hand**

Honorable John Michael Vazquez
United States District Judge
Post Office Building & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07101

Re: *United States v. Douglas et al.*, Crim. No. 17-544

Dear Judge Vazquez:

Please accept this *ex parte* letter brief in support of the Government's request under Rule 16 not to disclose to the defense that Gaurav Srivastava, a prospective Government trial witness, has worked with the FBI as a confidential informant on counterterrorism matters unrelated to this case.

At trial, Srivastava will likely testify under Rule 404(b) that in March and April 2016 he was induced by James Adkins and defendant Jerrid Douglas to pay them $250,000 based on the false promise of a €1 billion Standby Letter of Credit. Unrelated to this case, from September 2019 to December 2021, Srivastava was a confidential informant ("CI") for the FBI and provided information concerning national security and counterterrorism matters. Srivastava was paid $7,244.08 by the FBI for his work as a CI: $500 for "services," and the remainder for reimbursement of expenses like food and travel.

Because of its sensitive nature, the Assistant U.S. Attorneys on this case do not know even the general nature of the information provided by Srivastava, let alone specific information he furnished. However, an FBI agent with knowledge of

Srivastava's activities as a CI confirmed that there is no information in Srivastava's CI file, nor anything about his work as a CI, that might call into question Srivastava's credibility. The agent also confirmed that Srivastava stopped working as a CI for strictly administrative reasons. Accordingly, the Government respectfully requests that the Court order that the Government can withhold information about Srivastava's work as a national security and counterterrorism CI from the defense here.

At the outset, Srivastava's role as a CI does not implicate disclosure requirements under *Giglio v. United States*, 405 U.S. 150 (1972). Srivastava is a victim witness in this case and became a CI over three years after the alleged fraud at issue. His work as a CI, and the *de minimis* payment he received ($500 after expenses), simply has nothing to do with this case. It also is not probative of his truthfulness. The FBI confirmed that Srivastava's CI file contains no *Giglio*-type information. If anything, the FBI's apparent trust in Srivastava on sensitive national security matters would serve only to bolster his credibility. Thus, disclosing Srivastava's role as a CI is not subject to production under *Giglio*. *See* Fed. R. Evid. 608(b) (allowing inquiry into specific instances of conduct, in the discretion of the court, only if "probative of truthfulness or untruthfulness"); *see also United States v. Bocra*, 623 F.2d 281, 288 (3d Cir. 1980) ("the type of inquiry into specific conduct of the witness for impeachment purposes is *quite limited*"); *United States v. Abair*, 746 F.3d 260, 263 (7th Cir. 2014) ("Because the possibilities for abuse are substantial . . . the conduct must be sufficiently relevant to truthfulness before it can be the subject or cross-examination.").

Moreover, courts have long recognized the Government's right, absent special circumstances, to withhold from the defense the identity of government informants. *Roviaro v. United States,* 353 U.S. 53 (1957); *see also McCray v. Illinois,* 386 U.S. 300, 309 (1967) (the privilege "is well established, and its soundness cannot be questioned"). As the Supreme Court explained, this privilege is necessary to protect government informants as well as to promote effective law enforcement:

> Communications of this kind [by informants] ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity – to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.

*McCray*, 386 U.S. at 308-09 (citation omitted).

The issue of an informant's identity typically arises where, unlike here, a person acting as an informant provided information about a pending criminal matter and the government seeks to conceal that informant's identity. In such circumstances, disclosure of an informant's identity is required only when there is an adequate showing that disclosure is "relevant and helpful to the defense" and "essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60-61. Mere speculation that disclosure would be helpful is not sufficient to override the Government's privilege. *Id.* at 197 ("mere speculation that an eyewitness may have some evidence helpful to the defense's case is not sufficient to show the specific need required by *Roviaro*"); *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) (en banc); *United States v. Brenneman*, 455 F.2d 809, 811 (3d Cir. 1972). In *United States v. Jiles*, 658 F.2d 194, 198-99 (3d Cir. 1981), the Third Circuit concluded that *Rovario* and *McCray* required disclosure of a confidential informant's identity where: "(1) the [confidential informant's] testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." (*citing* McCray, 386 U.S. at 310-11, and *Roviaro*, 353 U.S. at 63-65).

Absent this showing, courts have repeatedly refused to compel the Government to disclose an informant's identity. *See, e.g., United States v. Allen*, 566 F.2d 1193, 1194 (3d Cir. 1977); *United States v. Cantor*, 470 F.2d 890, 892 (3d Cir. 1972); *United States v. Ferrone*, 438 F.2d 381, 386-87 (3d Cir. 1971). If, however, this heavy burden is met, courts then balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *McCray*, 386 U.S. at 62, 77.

Here, the circumstances strongly favor maintaining Srivastava's anonymity as a Government CI. As discussed, his identity as a CI and the details of his assistance to the FBI have no connection to his trial testimony. He is a victim witness from an alleged fraud that took place in 2016, long before he began working as a CI on national security and counterterrorism matters. Thus, pursuant to Rule 16(d)(1), the Government respectfully requests that the Court permit the Government to withhold information pertaining to Srivastava's work as a CI from the defense in this case.

Rule 16(d)(1) also provides that "the court may permit a party to show good cause by a written statement that the court will inspect *ex parte*." According to the Advisory Committee Notes, "[a]n *ex parte* proceeding would seem to be appropriate if any adversary proceeding would defeat the purpose of the protective or modifying order." Fed. R. Crim. P. 16, 1975 Amendment.

Obviously, disclosure of the contents of this letter and the proposed protective order would defeat the purpose of the requested application. Accordingly, the Government respectfully asks that the Court consider this letter and grant the

Government's requested relief *ex parte*. *See United States v. Innamorati*, 996 F.2d 456, 487-88 (1st Cir. 1993) (noting that Rule 16 "expressly authorizes the court to deny discovery of information sought by a defendant based on an *ex parte* showing by the government of the need for confidentiality").[1]

Finally, when the Court considers an *ex parte* submission, Rule 16(d)(1) requires the Court to seal that submission. According to the Advisory Committee Notes, an *ex parte* application under Rule 16 "shall be made to the judge alone if the party so requests." Fed. R. Crim. P. 16, 1975 Amendment. Thus, the Government requests that this letter brief also not be revealed to any of the defendants.

The Government is available to discuss these issues with the Court at its convenience if necessary.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

*s/ Jason S. Gould*
By: Jason S. Gould
Joshua L. Haber
Assistant U.S. Attorneys

It is hereby ordered on this 4th day of ~~September~~ October, 2022, that this letter-brief is sealed until further order of the Court. It is also ORDERED, for the reasons stated on the sealed record of October 4, 2022, that the GOVERNMENT'S MOTION TO NOT DISCLOSE IS GRANTED.

THE HONORABLE JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE

[1] The Government will notify each defendant about this application, but obviously not its contents.