**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**ESTHER SALAS**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST.
ROOM 5076
NEWARK, NJ 07102
973-297-4887

May 29, 2025

**LETTER MEMORANDUM**

Re: *United States of America v. Roy Johannes Gillar, et al.*,
   Criminal Action No. 17-0544 (ES)

Dear Parties:

Before the Court is defendant Roy Johannes Gillar's ("Defendant") motion for a sentence reduction pursuant to Amendment 821 of the Sentencing Guidelines (hereinafter "Amendment 821") and 18 U.S.C. § 3582(c). (D.E. No. 748 ("Motion" or "Mov Br.") at 1). On October 25, 2024, the Government opposed, (D.E. No. 753 ("Opp. Br.")), and on November 22, 2024, Defendant replied, (D.E. No. 754 ("Reply Br.")). The Probation Office has informed the Court that Defendant appears to be eligible for a sentence reduction as a result of Amendment 821. (D.E. No. 755 at 1). Defendant's counsel also submitted an "update" letter dated May 22, 2025. (D.E. No. 759). Having carefully considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009); *see also* L. Civ. R. 78.1(b); L. Crim. R. 1.1. For the following reasons, Defendant's Motion is **DENIED**.

**I.   BACKGROUND**

On October 10, 2019, a federal grand jury sitting in Newark issued a second superseding indictment against Defendant and three co-defendants.[1] (D.E. No. 260 ("Second Superseding Indictment")). The Second Superseding Indictment charged Defendant with six total counts, including one count of wire fraud conspiracy (Count I), four counts of wire fraud (Counts II–V), and one count of transacting in criminal proceeds (Count VI). (*See generally id.*). On October 21, 2022, following a five-week trial before the Honorable John M. Vazquez, U.S.D.J. (ret.), a jury found Defendant guilty on all six counts. (*See* D.E. No. 705 (Judgment) at 1).

By way of brief background, as described in the Presentence Report (D.E. No. 755-2 ("PSR")),[2] defendants operated two shell companies called Grupo Mundial Balboa ("GMB") and Brilliant Petroleum Company ("BPC"). (PSR ¶¶ 14–16). Defendant purportedly acted as Director

---

[1] The Court will refer to Defendant together with his co-defendants as "defendants."
[2] The Court understands that Defendant maintains his innocence; however, Judge Vazquez confirmed that neither party objected to the PSR during sentencing, without asking Defendant whether he admitted to the conduct therein. (D.E. No. 713 ("Sent. Tr.") at 4:16–21).

of both GMB and BPC. (*Id.* ¶ 16). Defendant also purportedly owned two other companies, including All Bloom Trading Limited ("All Bloom"), incorporated in Hong Kong, and Gillar Worldwide Group Limited ("Gillar Worldwide"), incorporated in Florida. (*Id.* ¶ 18). Between March 2016 and June 2016, defendants collectively agreed to defraud individual victims, who operated together as a company, out of approximately $1,000,000. (*Id.* ¶ 26). Among other things, defendants falsely represented that GMB and All Bloom could acquire and provide the victim company with a standby letter of credit ("SBLC") that it could use to further its business. (*Id.*). Contrary to their fraudulent representations, the victim company never received the SBLC or anything else of value from GMB or the defendants. (*Id.*). Rather, the defendants used the victims' money to buy luxury personal items such as cars and watches and to pay mortgages on their personal homes. (*Id.*). Defendants used fake bank documents, their fictious entities, and corporate shells to carry out their scheme. (*Id.*). Relevant here, Defendant "led the conspiracy by largely being responsible for circulating fictious bank documents to the [d]efendants and [v]ictims." (*Id.*). Defendant also "generated the most profit of the ill-gotten gains." (*Id.*).

Overall, the "evidence at trial conclusively established beyond a reasonable doubt that [defendants] . . . executed the scam by consistently and continually lying to the [v]ictims to trick them into paying money for a financial product that did not exist." (*Id.* ¶ 44). Moreover, defendants tried to cover up their fraud in various ways: "they sent the victims a bogus HSBC bank document; they promised bank certifications and bank letters that never materialized; they sent an 'attorney letter' supposedly vouching for [Defendant]; they sent fake instructions about confirming the SBLC on Euroclear; and they warned the victims that they could not call, fax, or email the bank." (*Id.* ¶ 47).

On June 22, 2023, Judge Vazquez sentenced Defendant to seventy-two months' imprisonment on Counts I–VI, to run concurrently, and three years of supervised release. (D.E. Nos. 700 & 705 at 2–3). The Court also ordered Defendant to pay $1,109,545.00 in restitution. (D.E. No. 705 at 7). Relevant here, Judge Vazquez denied Defendant's request for a prospective application of a two-level reduction under the then-forthcoming Amendment 821 because he found Defendant caused substantial financial hardship to multiple victims. (Sent. Tr. at 29:18–30:1).

## II.   LEGAL STANDARD

As provided by 18 U.S.C. § 3582(c)(2) a federal district court may reduce an otherwise final sentence pursuant to an amendment to the United States Sentencing Guidelines "if a reduction is consistent with the [Sentencing] Commission's policy statements." *Dillon v. U.S.*, 560 U.S. 817, 821 (2010). Amendment 821 to the Guidelines became effective on November 1, 2023, and applies retroactively. U.S.S.G § 1B1.10(a)(1), (d). "Part B of Amendment 821 created a new provision, Section 4C1.1, which provides a two-level downward adjustment in offense level for offenders who present zero criminal history points, unless the defendant falls within one of the listed exceptions to relief." *United States v. Weiss*, No. 20-0163, 2024 WL 3623510, at *1 (E.D. Pa. Aug. 1, 2024) (citing U.S.S.G. § 4C1.1).

Under the enumerated exceptions, a defendant is ineligible for a sentence reduction if: (1) he received criminal history points under U.S.S.G. § 4.A; (2) he received a terrorism adjustment

under U.S.S.G. § 3A1.4; (3) he used violence or credible threats of violence in connection with the offense; (4) the offense resulted in death or serious bodily injury; (5) the offense was a sex offense; (6) ***he personally caused substantial financial hardship***; (7) he possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon in connection with the offense; (8) the offense was an offense involving individual rights covered by U.S.S.G. § 2H1.1; (9) he received a hate-crime-motivation or vulnerable-victim adjustment under U.S.S.G. § 3A1.1; or an adjustment for a serious human rights offense under U.S.S.G. § 3A1.5; (10) he received an aggravating-role adjustment under U.S.S.G. § 3B1.1; or (11) he was engaged in a continuing criminal enterprise as defined in 21 U.S.C. § 848. *See* U.S.S.G. § 4C1.1(a)(1)–(11).

Pertinent here is the exception described in U.S.S.G. § 4C1.1(a)(6), which provides that the defendant "did not personally cause substantial financial hardship." U.S.S.G. § 4C1.1(a)(6). "In determining whether the defendant's acts or omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1 (Theft, Property Destruction and Fraud)." U.S.S.G. § 4C1.1(b)(3). These factors include whether the offense resulted in the victim(s):

> (i)   becoming insolvent;
>
> (ii)  filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
>
> (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
>
> (iv)  making substantial changes to his or her employment such as postponing his or her retirement plans;
>
> (v)   making substantial changes to his or her living arrangements, such as a relocating to a less expensive home; and
>
> (vi)  suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1, n.4(F). Indeed, "[s]ubstantial financial hardship might also be present where the number of victims is high, the amount lost is high, or the victims are particularly vulnerable." *Weiss*, 2024 WL 3623510, at *2 (first citing *United States v. Ortiz*, No. 19-0161, 2023 WL 1929690, at *5 (E.D.N.Y. Feb. 10, 2023) (finding that the defendant caused significant financial hardship because he misappropriated $224,500); and then citing *United States v. Bronfman*, No. 18-0204, 2024 WL 1740484, at *1 (E.D.N.Y. Apr. 23, 2024) (finding that financial difficulties or exploiting immigration status may constitute causing substantial financial hardship)).

If a defendant is eligible for a sentence reduction, the court must also consider any applicable factors under 18 U.S.C. § 3553(a) ("Section 3553(a)") and determine, in its discretion, whether a reduction is warranted "in whole or in part under the particular circumstances of the case.'" *Dillon*, 560 U.S. at 826–27.[3]

### III.   ANALYSIS

***First***, Defendant argues that he is entitled to a two-level reduction pursuant to U.S.S.G. § 4C1.1(a) because he did not "'personally cause substantial financial hardship' under the plain language of § 4C1.1(a)(6)." (Mov. Br. at 6). He contends that "[i]t remains unclear if any of the victims sustained 'substantial financial hardship'" and that neither the Government nor the Probation Office moved for the enhancement under U.S.S.G. § 2B1.1(b)(2).[4] (*Id.*).

***Second***, Defendant maintains that even if victims suffered substantial financial hardship, the "evidence at trial and sentencing did not support that [he] *personally caused* it" because his alleged participation in the offense conduct occurred *after* the victims sent money to defendants. (*Id.* at 6–8). Defendant supports his argument by comparing language in the aggravating factor under U.S.S.G. § 4C1.1(a)(6)—i.e., requiring that a defendant "***personally cause*** substantial financial hardship"—with language from the enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(iii)— providing for a two-level increase if the offense "***resulted in*** substantial financial hardship." (*Id.* at 7). Thus, Defendant argues that "the language [of U.S.S.G. § 4C1.1(a)(6)] is limited to the consequences of [his] own acts and omissions." (*Id.*). Defendant maintains the language under the enhancement is broader in scope and that the Sentencing Commission could have used the same language when creating the aggravating factors under U.S.S.G. § 4C1.1(a)(6). (*Id.* at 7–9 (citing *United States v. Elendu*, No. 20-0179-14, 2024 WL 458643, at *3 (S.D.N.Y. Feb. 6, 2024) (denying motion for sentence reduction based on Section 3553(a) factors and stating—without analysis—that defendant's "money laundering activity as a member of a conspiracy that defrauded individuals and businesses would not disqualify him [for the zero-point offender reduction] since he did not 'personally cause' substantial financial hardship to the victims of the fraud in which he participated"))). In addition, while Judge Vazquez found victims suffered personal financial hardship during sentencing, Defendant asserts the court did not find that he "personally caused" such hardship. (*Id.* at 9).

***Third***, with respect to the Section 3553(a) factors, Defendant argues that (i) zero-point offenders such as himself have the lowest risk of recidivism, (ii) a sentence reduction would not

---

[3]   The factors the Court considers under 18 U.S.C. § 3553(a) are: (i) the nature and circumstances of the offense and the defendant's history and characteristics; (ii) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences and sentencing ranges established for the defendant's crimes; (iv) pertinent policy statements issued by the United States Sentencing Commission; (v) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (vi) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (2)(B)–(D) & (4)–(7).

[4]   U.S.S.G. § 2B1.1(b)(2)(A) provides for a two-level increase "[i]f the offense—(A) (i) involved 10 or more victims; (ii) was committed through mass-marketing; *or* (iii) resulted in substantial financial hardship to one or more victims." (emphasis added).

implicate public safety concerns, (iii) a sentence reduction would otherwise be consistent with the purposes of sentencing, and (iv) his post-sentencing conduct supports a sentence reduction. (*Id.* at 10–14). ***Finally***, in addition to his desire to remain close with his daughter, Defendant cites to his mother's health issues, including cardiac episodes and surgeries, stating that he is "desperate to care for his mother." (*Id.* at 14–15).

In opposition, the Government first points to Defendant's pending appeal in the Third Circuit and argues that pursuant to Federal Rule of Criminal Procedure 37, the Motion should be denied without prejudice pending appeal. (Opp. Br. at 9–11). Second, the Government contends that the law of the case doctrine—specifically Judge Vazquez's finding that the zero-point offender reduction did not apply to Defendant—bars the relief sought. (*Id.* at 11–12). Moreover, the Government maintains Defendant personally caused substantial financial hardship. (*Id.* at 12–14 (citing victim impact statements and victim testimony from trial)). Lastly, the Government asserts that even if Defendant were eligible for a sentence reduction, this Court should deny his Motion under the Section 3553(a) factors, which weigh against such relief. (*Id.* at 15–18).

### A.    Jurisdiction

Relevant here, "[t]he filing of a notice of appeal is an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. Martin*, 2020 WL 1819961, at *1 (S.D.N.Y. Apr. 10, 2020) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Although Defendant's brief on appeal had not been filed at the time of the instant Motion, the Court's independent review of Defendant's filed brief reveals that it does not include arguments with respect to the present dispute. *See United States of America v. Roy Gillar*, Appeal No. 23-2205, D.E. No. 37 (Dec. 3, 2024). Nonetheless, at least one court has found that once a defendant "filed his Notice of Appeal challenging the Court's judgment, jurisdiction over the questions raised in his 18 U.S.C. § 3582(c) motion transferred to the Second Circuit." *United States v. Prussick*, No. 20-0048, 2024 WL 2188700, at *2 (E.D.N.Y. May 15, 2024) (internal citation omitted). The Court notes that, by Order dated May 13, 2025, the United States Court of Appeals for the Third Circuit stayed Defendant's appeal pending resolution of a separate issue. (D.E. No. 758). That stay remains in effect to date.

Federal Rule of Criminal Procedure 37 provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). The advisory committee notes list "motions under 18 U.S.C. § 3582(c)" as one of three types of motions for which the drafters "anticipate[ ] that Criminal Rule 37 will be used primarily if not exclusively." Fed. R. Crim. P. 37 advisory committee's note (2012).

To the extent Defendant's appeal divests this Court of jurisdiction, and regardless of whether the appeal had been stayed, the Court would deny Defendant's Motion under Rule 37(a)(2) in the interests of judicial economy. Indeed, even if Defendant did not file an appeal, the

Court would deny the instant Motion on the merits for the reasons discussed below.

### B.     The Record Supports Judge Vazquez's Ruling on U.S.S.G. § 4C1.1(a)(6)

Although Amendment 821 did not go into effect at the time of Defendant's sentencing, Judge Vazquez reviewed the then-forthcoming amendment and determined that Defendant did not qualify for the zero-point offender reduction. (Sent. Tr. at 29:12–16). Judge Vazquez held that the forthcoming zero-point offender reduction "would not be applicable in this case because one of the criteria is that the defendant did not personally cause substantial financial hardship." (*Id.* at 29:18–20). Indeed, Judge Vazquez found Defendant "did cause personal financial hardship when he took the money and spent it on himself and sent another large amount to [a co-defendant]." (*Id.* at 29:20–30:1 (citing PSR ¶¶ 91 to 95 and victims' letters which supported a finding of substantial financial hardship)). Finally, Judge Vazquez noted that even if the two-level reduction would apply, he would have varied upward "given the fraud on the [c]ourt" and his lack of confidence that Defendant "will not be a recidivist in this case." (*Id.* at 30:5–10).

This Court's review of the record reflects that Judge Vazquez properly found Defendant ineligible for the zero-point offender reduction. Indeed, this Court need not look further than the victim impact statements and the PSR, both of which firmly support Judge Vazquez's ruling. (*See* Sent. Tr. at 29:18–30:1; *see also* PSR ¶ 91 (quoting K.S.'s victim statement: "This case . . . has severely set back many of my future goals along with any and all business endeavors. It has been a very difficult time managing . . . personal finances considering that [the] majority of the amounts were withdrawn from my retirement savings (IRA) account in order to support my son in this deal."); *id.* ¶ 93 (quoting B.S.'s victim statement: "I lost my whole life savings and more because of being a victim of this fraud. I wanted to do something greater in my life and what I believed to be a legitimate opportunity to achieve that was taken away from me in the blink of an eye. I do not come from money. I had to dip into my savings, take out a loan, and pay fees/interest."); *id.* ¶ 95 (quoting B.S.'s victim statement: "Till this day, the losses I incurred from this fraud still haunt and affect me in many ways.")). Moreover, as noted by the Government, Judge Vazquez also heard from victims during trial and at sentencing. (Opp. Br. at 13). This testimony bolsters Judge Vazquez's ruling. (*See* D.E. No. 646 at 2100:16–17 (testifying that "[defendants] took our money, and I don't have any money right now"); *see also* Sent. Tr. at 39:9–14 ("The impact this man and his associates caused us was not only financial but my father and I, my best friend and I, my best friend's father and him, it just went down the gutter. There was so much money lost, there was so much trust lost, we couldn't look eye to eye.")).[5]

For these reasons, this Court agrees with Judge Vazquez and finds that Defendant is ineligible for a sentence reduction. *See, e.g., United States v. Cheng*, No. 21-0261, 2025 WL

---

[5] The Court rejects Defendant's argument that he did not "personally cause" substantial financial hardship. (Mov. Br. at 6–7; *see also* Reply Br. at 1 (arguing that "[t]he exception only applies to those who directly induce payment by victims, not to those whose conduct occurs *after* payment, like Mr. Gillar")). Indeed, the PSR states that Defendant participated in a 45-minute recorded call during which he "repeatedly lied" to victims about, among other things, "where their money was; proof of what had happened to their money; the status of the SBLC; [and] whether the SBLC had been ordered." (PSR ¶ 65; *see also id.* ¶ 66). At minimum, Defendant's concealment and direct lies to victims support the substantial financial hardship he personally caused, as described above.

573767, at *3 (S.D.N.Y. Feb. 21, 2025) ("As Judge Nathan put it at sentencing, Cheng's conduct destroyed lives, businesses, dreams, and families. Because these harms amounted to substantial financial hardship, Cheng fails the criteria of paragraph (a)(6) and may not receive a reduction under Amendment 821." (cleaned up)).[6]

### C. Section 3553(a)

Lastly, even if Defendant was eligible for a reduction under Amendment 821 and notwithstanding his rehabilitative efforts or current familial circumstances, this Court finds that his sentence of seventy-two months' imprisonment remains sufficient, but not greater than necessary, to accomplish the goals of sentencing.

As an initial matter, during sentencing, Judge Vazquez applied a two-level enhancement for the Defendant's obstruction or impediment to the administration of justice pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1. Specifically, the court found at least three instances during which Defendant obstructed justice or caused such obstruction by way of both false documents and untruthful testimony before the court in connection with his bail application. (Sent. Tr. at 28:25–28:11). In Judge Vazquez's view, although only a two-point enhancement could be added, he believed it "should [have] be[en] a six-point enhancement" in light of Defendant's conduct, which the court described as having "no regard for the law, no regard for the truth, [and] no regard for anybody but Mr. Gillar and what he wants to do at that particular time." (*Id.* at 28:14–18; *see also id.* at 28:20–23 (noting that "it was the worst obstruction that [Judge Vazquez] ever dealt with as a federal judge by one defendant and a perfect example of taking a good situation and making it worse, worse, worse")). This conduct alone provides sufficient justification for Defendant's sentence and denial of the instant Motion.

As to the nature and circumstances of the offense, Judge Vazquez noted how nothing except the victims' money in this matter was real. (*Id.* at 63:17–18). Rather, the scheme involved a variety of shell entities, false promises, and fake documents. (*Id.* at 63:18–23). Defendant received the "lion's share of the money" and spent it on "a Mercedes-Benz, a high-end apartment in Miami, and two Rolexes," among other things. (*Id.* at 63:24–64:1). Indeed, Judge Vazquez rejected counsel's arguments downplaying Defendant's role in the scheme because he "took the money, . . . [and] had made a promise to provide something in return for that money." (*Id.* at 64:21–65:1).

---

[6] The Court also rejects the notion that the requested relief is warranted because the Government and the Probation Office failed to seek the substantial financial hardship enhancement pursuant to U.S.S.G. § 2B1.1(2)(A)(iii). *See, e.g.*, *United States v. Hanson*, No. 19-0089, 2024 WL 2781065, at *4 (D.N.D. May 30, 2024) ("The [c]ourt rejects the contention that there can be no finding of substantial financial hardship absent an enhancement under U.S.S.G. § 2B1.1(2)(A)(iii)."). Critical here, Application Note 1 to U.S.S.G. § 4C1.1 provides "[t]he application of subsection (a)(6) is to be determined ***independently*** of the application of subsection (b)(2) of § 2B1.1." *Id.* (emphasis added). Thus, U.S.S.G. § 4C1.1(a)(6) "does not itself limit its application to cases where the enhancement under Section 2B1.1(2)(iii) applied as it does in subsection (2), (8), (9), and (10)." *Id.* (finding defendant ineligible for a sentence reduction under U.S.S.G. § 4C1.1(a)(6) where "[t]he loss was heart-breaking, substantial, and clear"); *see also United States v. Stites*, No. 22-20020, 2024 WL 3535120, at *2 & *4 (D. Kan. July 24, 2024) ("The court rejects Ms. Stites's argument that the court can't find substantial financial hardship absent an enhancement under § 2B1.1(b)(2)(A)(iii).").

As to the history and characteristics of the Defendant, the court considered that he came to the United States at the age of five from South Africa "due to the apartheid government and protests thereto." (*Id.* at 65:24–66:4). Judge Vazquez recognized Defendant's education, work history, familial relationships, substance and gambling histories, and ultimately commented that in the United States, Defendant had a "good upbringing in a safe and loving environment." (*Id.* at 66:10–68:1). Finally, as to deterrence, although the court acknowledged that Defendant did not have any prior convictions, Judge Vazquez found the need for both general and specific deterrence given the offense conduct and Defendant's obstruction, as described above. (*Id.* at 68:2–7; *see also id.* at 68:10–11 (commenting that this was "not a typical case in a negative way") & *id.* at 70:5–6 (noting that Defendant's conduct while on bail "goes to [Judge Vazquez's] view that he will be a recidivist despite his age")).

For all of these reasons, the analysis under Section 3553(a) weighs heavily against granting Defendant's Motion.

## IV. CONCLUSION

Based on the foregoing reasons, it is on this 29th day of May, 2025,

**ORDERED** that Defendant's Motion, (D.E. No. 748), is **DENIED**; and it is further

**ORDERED** that the Clerk of Court shall mail a copy of this Letter Memorandum to Defendant by regular U.S. mail.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**