**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*Appeals Division*

*Steven G. Sanders*
*Assistant U.S. Attorney*

*970 Broad Street, 7th floor*
*Newark, New Jersey 07102*

*973-645-2846*

September 30, 2025

**BY ECF**

Honorable Esther Salas, U.S.D.J.
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re: *United States v. Gillar et als.*, Crim. No. 17-544**

Dear Judge Salas:

Having had time to carefully review this matter, the Government opposes as premature Defendants' motion for discovery, ECF No. 769, complete with civil-style document demands and interrogatories, *id.* Exhibits H–I.[1] It puts the proverbial cart before the horse.

This is not a civil action. It is a criminal case governed by the Federal Rules of Criminal Procedure. A defendant who learns of allegedly suppressed information within three years of the verdict should file a motion for a new trial under Rule 33(b)(1). *E.g.*, *United States v. Baskerville*, 492 F. App'x 254, 256 (3d Cir. 2012) ("As a result of this newly disclosed evidence, on July 1, 2009, Baskerville filed a motion for a new trial … arguing that Snowden or the prosecution may have concealed the DVRO, and that if he had been able to cross-examine Snowden about the DVRO, he could have impeached Snowden and changed the outcome of the trial."). If the Government's response to that motion does not allow the Court to resolve the motion on the papers, the Court has discretion to order an evidentiary hearing, *e.g.*, *United States v. Dansker*, 565 F.2d 1262, 1264-66 (3d Cir. 1977), and the production of documents in advance of that hearing, *see United States v. Espinosa-Hernandez*, 918 F.2d 911, 914 (11th Cir. 1990) (reversing denial of motion for evidentiary hearing where "[d]iscovery into the new allegations might support Espinosa's claim that Urso deliberately secured Navarro's unavailability").

[1] Citations to pleadings filed in this matter are to the page numbers in the ECF legend in the header of the pleading in question.

The same holds true for a motion to vacate sentence under 28 U.S.C. § 2255, which *is* treated as a hybrid civil matter. A defendant "has no right to engage in discovery prior to filing a motion to vacate his sentence." *In re Fed. Grand Jury*, 976 F.2d 733 (6th Cir. 1992). Discovery may be permitted only ***after*** the defendant has filed a § 2255 motion and ***after*** the Government has filed its Answer, at which point the Court can determine whether a hearing and discovery is necessary. § 2255(b); Rule 6 of the Rules Governing Section 2255 Motions. Even then, a district court may deny a hearing that focuses on suppression if the suppressed information isn't material. *See United States v. Velazquez*, No. 22-50239, 2025 WL 252585, at *2 (9th Cir.) ("[P]roof of whether the Government had knowledge of the misconduct would not affect the result because, as explained above, any evidence of misconduct was not material under *Brady/Giglio*."), *cert. denied,* 145 S. Ct. 2768 (2025).

Here, the Government has produced to Defendants derogatory information affecting Gaurav Srivastava's credibility. ECF No. 757. In response, Defendants haven't filed a new trial motion. Instead, they've sought broad-ranging discovery about *how* and *why* this information was suppressed even as they argue that it is both favorable and material to the verdict. ECF No. 769. Why do Defendants proceed in this fashion? Because they know the new information is utterly *immaterial*. As Your Honor said in denying bail pending appeal, "the evidence against Douglas and in support of the Government's case is overwhelming." ECF No. 738 at 9 (cleaned up), *aff'd*, 3d Cir. No. 23-2391, ECF No. 25.

Fully cognizant of this Court's view of the strength of the evidence, Defendants have gone to great lengths to elevate the relevance and impact of Srivastava's testimony. Now, they portray him as "a key and controversial witness." ECF No. 769 at 5; *see id.* at 19-21. But Judge Vazquez's Rule 404(b) limiting instruction shows just the opposite:

> Mr. Srivastava's testimony can be considered as to the source of funds. It may not otherwise be considered as to Mr. Gillar. It may also be considered as to Dr. Mignott only as to his relationship with Mr. Douglas and Mr. Adkins. Now, it may also be considered as to Mr. Douglas as to his relationship with Dr. Mignott and Mr. Adkins as well as Mr. Douglas's knowledge, intent, and/or lack of mistake as to the charged conduct.

Tr. 3045. And the Government devoted but a small fraction of its 101-page summation to Srivastava's testimony. Tr. 3070, 3072, 3080, 3133-35.

Srivastava's testimony did not address Gillar and served to help prove a relationship among Mignott, Adkins, and Douglas that the Defendants never seriously disputed at trial. At worst, Srivastava's testimony, even if believed after Defendants' extensive cross-examination, provided additional circumstantial evidence of Douglas' knowledge and intent and explained how $250,000 of Srivastava's money ended up intermingled with the other victims' $800,000, which

the coconspirators then divided among themselves. But the proof of how Defendants fraudulently obtained that $800,000—the core of the charged wire fraud conspiracy—came from the primary victims' testimony and from documentary evidence. As Judge Vazquez bluntly remarked after trial:

> It's all fake. Everything is fake in this case. BPC is on paper, GMB is on paper, All Bloom Trading, the SBLCs, the RWAs, the $21 billion gold, the $1 billion euro -- there is nothing that is real on your side of the table except for the victims' money, and you're trying to say he had a good-faith belief.

ECF No. 712 at 8; *accord id.* at 13 ("This is just a straight ha[m]-fisted fraud. 'Give us $800,000 for something that doesn't exist and we'll spend the money.").

So understood, the verdict plainly would have been the same even if all the newly revealed derogatory information had been produced before trial and even if Defendants could have successfully used it to decimate Srivastava's credibility before the jury. *See United States v. Lewis*, 567 F.3d 322, 328 (7th Cir. 2009) (withheld impeachment evidence immaterial given strength of the evidence); *United States v. Mehanna*, Crim. No. 09-10017, 2018 WL 3084057, at *3 (D. Mass. June 21, 2018) (denying § 2255 motion and motion for discovery where "even the utter destruction of Kohlmann's credibility would have had no weakening effect on the prosecution case regarding the trip to Yemen"); *cf. United States v. Salem*, 578 F.3d 682, 688 (7th Cir. 2009) (newly discovered impeachment evidence will not warrant a new trial except in unusual instances "such as when the government's case rests entirely on the uncorroborated testimony of a single witness") (cleaned up).

Tellingly, in all the cases Defendants cite, the courts required a hearing *after* the defendant had filed a Rule 33 motion, a § 2255 motion, or a § 2254 application, and *after* a court had concluded that it could not decide on the papers materiality or suppression—two critical elements of a *Giglio* claim. ECF No. 769 at 9-10 (citing cases). And in one of those cases, *United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007), the defendant learned after trial that the prosecution's only witness in a sexual assault case had falsely accused someone else of sexual assault. The District Court had denied the Rule 33 motion because, even assuming that evidence had been suppressed, it would have been inadmissible under Federal Rule of Evidence 608(b) and, thus, immaterial. In remanding for a hearing and discovery, the Tenth Circuit rejected that premise, noting that after a hearing the trial court might conclude that it would have allowed Velarde to introduce extrinsic evidence of the false accusation, which directly rebutted the victim's testimony. This case, as already explained, is worlds away from *Velarde*: Defendants' guilt turned on evidence wholly separate from the testimony of Srivastava.

Defendants also pepper their motion with unsupported accusations of prosecutorial misconduct. For example, they claim that AUSA Haber's March 2025 letter was false and misleading because it contended the prosecution team was

unaware of the details of the Los Angeles fraud investigation into Srivastava, even though an FBI report about that fraud, which former AUSA Haber produced to Defendants later, shows that the lead FBI agent in this matter was copied on that report. If the lead Agent received that report (and the Government concedes she did), then that report was suppressed even if the Agent did not recall having received or read it. Defendants conflate actual knowledge with constructive possession and attempt to fault AUSA Haber for not making that same mistake. At any rate, Defendants focus on ***suppression***, not ***materiality***.

Defendants also claim the Government violated its *Brady* obligations "and continues to be blindered to its obligations." ECF No. 769 at 25. The Government suppressed *Giglio*—not *Brady*—material. Nothing revealed in the March 2025 disclosure provides an alternative theory of the fraud for which Defendants were justifiably convicted: at worst, the new information impeaches an already-impeached witness and, perhaps, could lead to a reduction in the restitution ordered. ECF No. 769 at 14 (describing how $250,000 of the $1.09 million in restitution was directed to Srivastava). Defendants thus overstate the matter by labeling impeachment information as *Brady* material.

Most of the discovery Defendants seek focuses on the diligence of the prosecution team in acquiring information about Srivastava—and thus whether double jeopardy principles would bar a retrial. ECF No. 769 at 25-26 (arguing that the handling agent in Los Angeles may have deliberately or recklessly suppressed the derogatory information about Srivastava).[2] But all of that presupposes the information is material and requires a remedy. Again, that puts the cart before the horse: if the information is immaterial, as the Government contends it is, then the diligence of the Government in failing to acquire it is irrelevant.

Defendants also insinuate discovery is necessary to determine whether the Government "attempt[ed] to conceal a [*Giglio*] violation." ECF No. 769 at 26. Besides being offensive, that suggestion is belied by the Government's March 2025 disclosure, its production of reports thereafter (which Defendants now cite), and the Government's ongoing investigation into what occurred. It is also belied by the Government's commitment to produce to defendants non-classified information relevant to their forthcoming Rule 33 motion (and to submit to this Court for *in camera* inspection classified information regarding Srivastava, if permissible).

Finally, during a conference call among counsel on September 26, 2025, the Government represented that it soon would make a disclosure (which it did

---

[2] To be sure, Defendants also seek documents concerning the fraud reported in the *Wall Street Journal*, which began in late 2022. ECF No. 769 at 20 & n.7. But they don't explain how the prosecution team could actually or constructively possess information that a CI for a different FBI Office concealed from his handler. Besides, such after-acquired impeachment evidence provides no basis for a Rule 33 motion. *See United States v. Robinson*, 627 F.3d 941, 952-53 (4th Cir. 2010).

yesterday) but sought Defendant's consent to additional time to respond to the discovery motion. The Government made that request because the bulk of the new information former AUSA Haber summarized in his March 2025 disclosure letter is classified: it needs to be reviewed by an AUSA with appropriate clearances at the FBI's Newark Office; appropriate material then needs to be declassified (a process that involves DOJ's National Security Division); and that material needs to be produced to this Court for *in camera* review. Given that AUSA Chenoweth only recently received his security clearance, he cannot begin reviewing that file until next week when his clearances are passed to the FBI. But the declassification process is likely to take two months to complete.

Defense counsel refused to consent to an extension unless the Government committed to providing responses (or objections) to the civil-procedure-style written discovery requests they attached to their discovery motion, including interrogatories and document requests that far exceed the Government's discovery obligations. So the Government opposes the discovery motion as premature to avoid a waste of judicial and prosecutorial resources. Defendants can file their Rule 33 motion right now and attempt to show why they think the newly revealed information is material, especially because the Government will assume, for purposes of responding to that motion, that the information revealed in the March 2025 letter was suppressed and favorable. If Defendants cannot show materiality despite those assumptions, then there is no need for this Court to conduct an evidentiary hearing, much less resolve a series of unpleasant and time-consuming discovery disputes about the diligence of the prosecution team.

The Government takes very seriously its obligations to review its own and the FBI's files and to continue to provide information relevant to the Defendants' forthcoming new trial motion. But Defendants are well-positioned to file their Rule 33 motions now. This Court should order them to do so.

Very truly yours,

TODD BLANCHE
U.S. DEPUTY ATTORNEY GENERAL

ALINA HABBA
ACTING UNITED STATES ATTORNEY
SPECIAL ATTORNEY

By: s/ Steven G. Sanders
Trevor A. Chenoweth
Assistant U.S. Attorneys

cc: All counsel
(by email and ECF)